IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE ) | |
| COMPLAINT OF ) | |
| ) | CASE NO. 12-00390-KD-N |
| NATURE'S WAY MARINE, LLC, ) | |
| Owner of the Tank Barge NWM 431 or ) | IN ADMIRALTY/RULE 9(h) |
| AO 431 (Hull No. D 557753) for ) | |
| Exoneration from or Limitation of Liability. ) | |

REPORT AND RECOMMENDATION

This action is before the Court on a motion to dismiss (doc. 40-41) filed by FlexiCrew Staffing, Inc. ("FlexiCrew"). The motion seeks dismissal of the cross-claim filed by APEX/FCC, LLC, d/b/a APEX/FCC Oilfield Services of Baton Rouge Louisiana ("Apex"). This matter has been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of FlexiCrew's motion, Apex's response in opposition thereto (doc. 52)[1], FlexiCrew's reply (doc. 57), and all other pertinent portions of the record, it is the recommendation of the undersigned that the motion to dismiss be **DENIED**.

1. <u>Background</u>.

This action arose in response to the personal injury lawsuit originally filed by

---

[1] Apex argues that the Court deny FlexiCrew's motion to dismiss because Apex's Cross-Claim "contains amply sufficient facts and should allegations to support its claim for indemnity and contribution against FlexiCrew." (Doc. 52 at 4). However, Apex requests that, to the extent the Court finds otherwise, it be granted leave to file the Amended Cross-Claim which has already been separately docketed. Doc. 52 at 4, *citing* Amended Cross-Claim (Doc. 53). The undersigned recommends that Apex's request for leave to amend its cross-claim against FlexiCrew (*id.*) be **GRANTED**.

Charles Brunson in the Circuit Court of Mobile, Alabama, styled as <u>Charles E. Brunson v. Apex/FCC, LLC d/b/a Apex/FCC Oilfield Services, et al.</u>, Case No. CV-2011-902394 (the "Brunson lawsuit").  (Doc. 1 at ¶ 9).  Brunson claimed that he sustained permanent bodily injury when exposed to toxic chemicals while cleaning rainwater from a barge at Apex's facility on the Theodore Industrial Canal in September 2011, in the aftermath of Tropical Storm Lee.  (Doc. 1 at ¶¶ 7-8).

The barge at issue in this litigation was owned by Nature Way Marine, LLC ("NWM").  (Doc. 1 at 1).  On April 17, 2012, Brunson amended his complaint in state court to add NWM as a party defendant.  On June 12, 2012, NWM filed the instant action seeking "Exoneration from or Limitation of Liability civil and maritime, within the meaning of Rule 9(h) and Supplemental Rule F of the Federal Rules of Civil Procedure." (Doc. 1 at 1).   On June 18, 2012, this Court enjoined any and all actions against NWM with respect to the incident described in Brunson's state court complaint. (Doc. 5 at 3). On or before the July 18, 2012 deadline set by the Court (*id*. at 2), Brunson, Apex, FlexiCrew, and Commerce & Industry Insurance Company ("Chartis") each answered NWM's limitation complaint and filed claims against NWM. (Docs. 7, 12, & 14). Subsequently, NWM asserted a counterclaim against FlexiCrew, and FlexiCrew asserted a crossclaim against Apex. (Docs. 25 & 32). [2]

---

[2] The nature of the relationship of these parties has been succinctly described in part by Judge William H. Steele in his Order dated November 1, 2012, in <u>Apex/FCC, LLC v. FlexiCrew Staffing, Inc.</u>, Civil Action No. 1:12-cv-00507-WS-N, prior to its consolidation with this case, as follows:

> In its pleading, Apex alleged that FlexiCrew (a staffing agency) had entered into a contract with non-party United States Environmental Services, LLC ("USES") in August 2010, under which

(Continued)

On August 14, 2012, Apex initiated a declaratory judgment action against FlexiCrew in this Court, styled Apex/FCC, LLC v. FlexiCrew Staffing, Inc., Civil Action No. 1:12-cv-00507-WS-N.  *See* Doc. 59 at Doc. 20 (Documents 1-21 Extracted from 12-0507-WS-N).  Apex seeks a declaration that "FlexiCrew has an obligation to indemnify and defend Apex in connection with the *Brunson* Lawsuit."  (*Id.,* internal citations omitted).   A motion filed by FlexiCrew to dismiss Apex's declaratory judgment action on grounds, *Inter alia*, that "this Court should exercise its discretion to decline jurisdiction pursuant to the principles set forth in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005)" was denied on November 1, 2012 (*id.* at Doc. 6 in 12-0507-WS-N).[3]

On September 17, 2012, this Court denied (doc. 33) Brunson's motion to lift the aforementioned limitations stay imposed on claims against NWM (doc. 9), which was predicated on certain stipulations he filed (doc. 8)  "to preserve NATURES WAY

---

FlexiCrew agreed to provide temporary workers to USES. Apex hired USES to remove rainwater from a barge at its facility on the Theodore Industrial Canal in September 2011, in the aftermath of Tropical Storm Lee. FlexiCrew provided temporary labor to USES for this project pursuant to the August 2010 contract. One of those FlexiCrew employees, [] Charles Brunson, purportedly sustained permanent bodily injury because of exposure to dangerous chemicals at the Apex facility during that assignment. Brunson filed a personal injury lawsuit (the "Brunson Lawsuit") against Apex and others in state court in October 2011. Apex brought a third-party complaint against FlexiCrew in the Brunson Lawsuit on May 14, 2012, asserting a claim for indemnity.

(Doc. 59 at 259-60).  NWM alleges that it owns the barge on which Brunson claims to have been injured but that it chartered the barge to Apex through an agreement dated September 6, 2011.  (Doc. 52 at 3).

[3] This Court also concluded that "the duty-to-indemnify issue is not ripe at this time [but] it would be inefficient and wasteful to dismiss the duty-to-indemnify claim outright."  (Doc. 20 in 12-0507-WS-N at 4).  The Court also rejected FlexiCrew's arguments that Apex lacked standing.  (*Id.* at 5-6).

MARINE, LLC's rights in the above-entitled limitation proceeding so as to permit mover herein to obtain a definitive judgment in Claimant's chosen form[,] [the Circuit Court of Mobile, Alabama]"  (doc. 9).   The Court found Brunson's stipulations to be inadequate because they "do not address the claims made for attorneys' fees and costs of defense." (Doc. 33 at 7).  The Court held that "[u]nless and until Brunson subordinates his claims to any claims against NWM for fees and/or costs, the limitation stay must remain in place." (*Id*.).

FlexiCrew's present motion to dismiss Apex's cross-claim pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted was filed on October 12, 2012.  (Doc. 41).  On October 30, 2012, Apex not only responded in opposition to this motion (doc. 52) but also filed an Amended Cross-Claim against FlexiCrew (doc. 53).  Flexicrew filed a reply on November 6, 2012 and specifically references Apex's Amended Cross-Claim, contending that it does not cure the deficiencies at issue in the pending motion to dismiss.  (Doc. 57).[4]

On November 8, 2012, an Order was entered consolidating Apex's declaratory judgment action (12-0507-WS-N) into this limitations action by NWM.  (Doc. 58). Consequently, all claims and parties associated with Brunson's alleged exposure to toxic chemicals in September 2011 while employed to remove rainwater from a barge owned by NWM and chartered to Apex at its facility on the Theodore Industrial Canal, are now

---

[4] During the course of the proceedings related to FlexiCrew's motion to dismiss Apex's Cross-claim against it, Brunson obtained leave of Court to dismiss the Brunson lawsuit in state court in order to file his "Verified Amended Complaint Under 33 U.S.C. § 905(b), General Maritime Law, and Negligence" alleging his personal injury claims against Apex and NWM.  (Doc. 50).

before the Court in this case. FlexiCrew's motion to dismiss has been fully briefed and is now ripe for disposition.

    II.    <u>Standard of Review</u>.[5]

Prior to <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544 (2007), a court could only dismiss a complaint "if it is was clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," as set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). This language as it relates to the Rule 12(b)(6 standard was expressly rejected in <u>Twombly</u> wherein the Supreme Court set forth the following standard regarding a court's determination of the sufficiency of pleading such as is in issue in this case:

> Federal Rule of Civil Procedure 8(a)(2) requires only " a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," Conley, 355 U.S. at 47. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citation omitted] a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [citation omitted]. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Twombly</u>, 550 U.S. at 555. The Supreme Court emphasized, however, that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to

---

[5] "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto'." <u>Grossman v. Nationsbank, N.A.</u>, 225 F.3d 1228, 1231 (11th Cir. 2000), *quoting*, <u>GSW, Inc. v. Long County</u>, 999 F.2d 1508, 1510 (11th Cir. 1993). All "reasonable inferences" are drawn in favor of the plaintiffs. <u>St. George v. Pinellas County</u>, 285 F.3d 1334, 1337 (11th Cir. 2002).

relief that is plausible on its face." 550 U.S. at 570.

The Supreme Court reinforced the Twombly standard in Ashcroft v. Iqbal, 556 U.S. 622, 677-680 (2009). The Court reiterated that a claim is insufficiently pled if it offers only "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'." Iqbal, 556 U.S. at 678, *quoting* Twombly, 550 U.S. at 557. The Supreme Court explained:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."

Iqbal, 556 U.S. 622, 678-79 (citation and internal punctuation omitted). *See also*, Phillips v. County of Allegheny, 515 F.3d 224, 233 (3rd Cir. 2008)("After Twombly, it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct'."), *quoting* Twombly, 550 U.S. at 553, n. 8. *See also*, Sinaltrainal v. Coca-Cola Co., 2009 WL 2431463 (11th Cir. Aug. 11, 2009)("The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss [*citing* Iqbal, 129 S.Ct. at 1949] [and] [t]he well-pled allegations must nudge the claim 'across the line from conceivable to plausible'" [*quoting* Twombly, 550

U.S. at 570]"). With this legal framework in mind the Court now turns to the merits of the FlexiCrew's motion to dismiss.

   III.   Analysis.

FlexiCrew argues, in sum, that Apex's claims for indemnity and/or contribution are due to be dismissed because:

- To the extent they are based upon an express contract, "Apex's conclusory allegations are unsupported by factual allegations sufficient to suggest anything other than the 'mere possibility' that it is entitled to relief."

- To the extent Apex's non-contractual claim of implied or common law indemnity is "based on 'the active/passive negligence doctrine', no such claim is available under maritime law" and if, instead, based upon the limited theory of "[allowing] a vicariously liable or non-negligent tortfeasor to be entitled to indemnity from a co-[defendant] guilty of actual fault," Apex has failed to assert any allegation "that it has been held (or is alleged to be) vicariously liable for the acts of FlexiCrew."

- "Apex's Cross-Claim is completely devoid of any facts upon which to base a claim for contribution.

(Doc. 41 at 4, 8, 9, 10).

A.

FlexiCrew's first argument is alleged to be supported by the principles set forth in Twombly and Iqbal, *supra*, and predicated on both the undisputed fact that Apex was not a party to the contact between FlexiCrew and USES as well as the contention that Apex's Cross-Claim "is devoid of any allegation . . . that Apex is a third-party beneficiary (intended or otherwise) of the FlexiCrew/USES contract." (*Id*. at 4-8). It is true that Apex did not specifically declare in its Cross-Claim against FlexiCrew that its indemnity claim is based upon its status as a third-party beneficiary, but it is evidently the intent in

view of the recitation of that portion of the subject contract which expressly deals with third party beneficiaries, namely FlexiCrew's contractual duty "to defend, indemnify and save harmless contractor, owner **[Apex]** and any other party which contractor is required to defend, indemnify and save harmless under any project related to contract . . . attributable to bodily injury, sickness, disease, death, damage to or destruction of property . . .caused by, arising out of, resulting from, occurring in connection with or connected in anyway to the subcontractor's work . . .whether or not caused in part, directly, indirectly, by the active or passive negligence or any other fault of a party indemnified hereunder provided, however, subcontractor's duty hereunder shall not arise if such injury, sickness, disease, death, damage, or destruction is caused by the sole negligence of a party indemnified hereunder."  (Doc. 36 at ¶ 16, emphasis added). Inasmuch as FlexiCrew does not dispute that Apex is an "owner" within the meaning of this indemnity clause of its contract with USES, Apex's claim is plausible under the Twombly/Iqbal standard.  In addition, FlexiCrew's complaint about Apex's failure to specifically state in its initial cross-claim that it was a third-party beneficiary under this contract is now moot in view of Apex's Amended Cross-Claim which makes it clear that Apex is asserting entitlement as a third-party beneficiary.  (Doc. 53 at ¶ 17).[6]

In a footnote, FlexiCrew contends that "Charles Brunson was a longshoreman at the time of the alleged incident, and therefore any alleged indemnity agreement between

---

[6] FlexiCrew's contention that the filing of an amended cross-claim "is tantamount to an acknowledgment by Apex that its original cross-claim failed to state a claim upon which relief can be granted (doc. 57 at 1-2) is neither supported by any legal authority nor a contention bearing any merit.

Apex, as the charterer of the vessel involved in the Limitation Action, and FlexiCrew, as employer of Brunson, is void." (Doc. 41 at n. 1). FlexiCrew also contends in the footnote that "Apex, as charterer of the vessel, is barred as a matter of law from seeking indemnity from FlexiCrew, under theories of contractual indemnity, implied indemnity, tort indemnity, or otherwise." (*Id.*). FlexiCrew concedes, however, that "[t]hese legal arguments are beyond the scope of this Rule 12(b)(6) motion." (*Id.*).

FlexiCrew further argues that "Apex does not allege . . . even that any party to the Limitation Action has asserted a claim against." (*Id*. at ¶ 9). This argument is moot in view of the claims of USES (doc. 42) and Brunson (doc. 50) against Apex.

B.

FlexiCrew's second argument relates to "Apex's non-contractual claims for indemnity." (Doc. 41 at ¶¶ 13-15). FlexCrew specifically argues no claim "based on the active/passive negligence doctrine" is available to Apex under maritime law. (*Id.* at ¶ 13), *citing* Columbus-McKinnon orp. V. Ocean Products Research, Inc., 792 F.Supp. 786, 788 (M.D. Fla. 1992)( "The Supreme Court in United States v. Reliable Transfer, 421 U.S. 397 [] (1975), . . . replaced [the active/passive theory] with the comparative fault doctrine."). FlexiCrew has not established, however, that Apex has asserted any claim under an "active/passive theory."

FlexiCrew also asserts that, "[w]ithout active-passive negligence indemnity, the only other potential non-contractual indemnity claim available under maritime law . . . is under a theory allowing "a vicariously liable or non-negligent tortfeasor to be entitled to indemnity from a co-[defendant] guilty of actual fault." (*Id*. at ¶ 14)*, citing* Columbus-

9

McKinnon, 792 F.Supp at 788.  As FlexiCrew acknowledged in a similar manner previously, these "legal arguments are beyond the scope of this Rule 12(b)(6) motion." (Doc. 41 at n. 1).[7]

C.

FlexiCrew further argues that Apex's contribution claim should be dismissed for failure to assert "any facts upon which to base a claim for contribution." (Doc. 41 at ¶ 18), *citing* Columbus-McKinnon, 792 F.Supp at 789.  Upon review of Apex's initial (doc. 36) and amended (doc. 53) cross-claim against FlexiCrew, the undersigned finds sufficient factual allegations in both documents to support the contribution claim, and therefore survive the Rule 12(b)(6) motion to dismiss.  *See* Columbus-McKinnon, 792 F.Supp at 789 ("A cause of action for contribution exists between concurrent tortfeasors where one tortfeasor has settled with the injured seamen and the other tortfeasor has not, and the amount of contribution turns on the percentage of fault for each joint tortfeasor.").

FlexiCrew's also argues that, "as the employer of Brunson, FlexiCrew cannot be construed as a tortfeasor [and] is immune from any tort suit by Brunson by virtue of the exclusivity provisions of the Longshore Act, 33 U.S.C. § 901 *et seq*." (Doc. 41 at n. 6). FlexiCrew's previous acknowledgment that similar "legal arguments are beyond the scope of this Rule 12(b)(6) motion" (doc. 41 at n. 1) applies as well to these contentions

---

[7] The Court declines to speculate at this juncture on the nature of Apex's non-contractual indemnity theory when it is clear that Apex has asserted a plausible contractual indemnity claim.

and, therefore, do not constitute grounds to dismiss Apex's Cross-Claim against FlexiCrew.

CONCLUSION

For the reasons stated above, it is the recommendation of the undersigned that FlexiCrew's motion to dismiss Apex's Cross-Claim, as now amended, be **DENIED.** The instructions which follow the Undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this   8th   day of January, 2013.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. §636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. §636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[8] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. §1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

   **DONE** this   8th   day of January, 2013.

                              /s/ Katherine P. Nelson
                              **UNITED STATES MAGISTRATE JUDGE**

---

[8] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  <u>Fed. R. Civ. P.</u> 72(b)(2).