**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF THE COMPLAINT** | ) | |
| **OF NATURES WAY MARINE, LLC,** | ) | |
| *Owner of the Tank Barge NWM 431 or AO 431* | ) | **CIVIL ACTION NO. 12-00390-KD-N** |
| *(Hull No. D 557753) for Exoneration from or* | ) | |
| *Limitation of Liability* | ) | |

**ORDER**

This matter is before the Court on Apex, LLC's, d/b/a FCC Oilfield Services ("Apex")

Motion for Summary Judgment as to its claim that it is owed a defense and indemnity from

Flexicrew Staffing, Inc. ("Flexicrew").

## I.    <u>Background</u>[1]

A personal injury lawsuit filed by temporary laborer Charles Brunson ("Brunson"),

regarding his alleged exposure to toxic chemicals while cleaning a barge on the Theodore

Industrial Canal in Mobile County, Alabama, spawned a number of claims, cross-claims, and

counter-claims among five (5) parties.   This particular litigation is rooted in Apex's contractual

claims -- namely, that it is a third party beneficiary to an August 2010 labor staffing contract

("the contract")[2] executed between U.S. Environmental Services, LLC ("USES")[3] and

---

1  At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. <u>Tipton v. Bergrohr GMBH–Siegen</u>, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." <u>Priester v.. City of Riviera Beach</u>, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

2  Two contracts between USES and Flexicrew were submitted, dated July 26, 2010 and August 13, 2010. Flexicrew admits that the August 2010 contract governs Apex's claims (Doc. 209 at 4); USES' corporate representative testified that the August 2010 contract governs (Doc. 187-9 at 18-19 (Dep. T.Bayham at 27-28)); Apex contends the same (Doc. 187-1 at 10; Doc. 219 at 1, 9, 15).

3  USES is a company that provides environmental, industrial, and marine cleaning and safety services to a broad range of customers, including maritime customers.   (Doc. 191-1 (Aff. T.Bayham)).

1

Flexicrew[4] (Doc. 187-3), and as such, is due defense and indemnity.

Specifically, on September 6, 2011, barge[5] owner Natures Way Marine, LLC ("Natures Way") executed a charter agreement with Apex. (Doc. 179-4). Apex was going to use the barge to transport "rainwater/wastewater" cargo. (Id.) A condition of the agreement was that Apex would return the barge to Natures Way in a "gas free" and clean condition. (Id.) After transferring the rainwater/wastewater from its facility to the barge, Apex hired USES to remove the rainwater and clean the barge – i.e., to provide a clean and "gas free" barge.

Pursuant to the August 13, 2010 contractual agreement for temporary labor between USES and Flexicrew, USES hired Flexicrew in September 2011 to provide two (2) laborers to clean the barge's tanks. The USES-Flexicrew contract provides, in relevant part, as follows:

> This Agreement…..between…..USES or "contractor"[] and Flexicrew…… "subcontractor"[] concerns services and work to be provided by you [Flexicrew] as a subcontractor to us [USES], regarding a project to be performed for our client.
>
> * * *
>
> ….This Agreement describes the work that you [Flexicrew] will do for us [USES], and the terms of our relationship. This Agreement may be used for a single project, or may serve as a master services agreement for a series of projects. You [Flexicrew] agree to work as an independent contractor, and not as an employee of us.
>
> * * *
>
> You [Flexicrew] agree to provide the services described as follows, and referred to as the Work: certified job specific supervisors, foreman and field techs…Administration Personal [sic]…job specific necessary transportation equipment…It is specifically agreed that for purposes of workers compensation, we [USES] are a statutory employer of you [Flexicrew], your [Flexicrew's] employees, subcontractors and suppliers and that you [Flexicrew] will maintain workers compensation insurance…
>
> * * *
>
> You [Flexicrew] will indemnify us [USES], as provided in Section 8.
>
> * * *
>
> 8. <u>Indemnification</u>.
>
> To the full extent permitted by law, subcontractor [Flexicrew] agrees to defend, indemnify and

---

4 Flexicrew is a staffing company which provides temporary skilled/unskilled laborers to other businesses; Brunson was one of its employees. (Doc. 187-4 at 3, 5 (Dep. A.March at 11, 13)).

5 Tank Barge NWM 431 or AO 431-Hull NO. D 557753.

save harmless contractor [USES], owner and any other party which contractor is required to defend, indemnify and save harmless under any project related contract, including but not limited to their officers, agents, servants and employees, from and against any claim, allegation, cost, expense, or liability (including pre-suit and post suit attorneys' fees, interest, investigative or any other expense related in any way to the claim or allegations), attributable to bodily injury, sickness, disease, death, damage to destruction of property (including loss of use thereof), resulting from, occurring in connection with or connected in anyway to the subcontractor's [Flexicrew's] work, its subcontractors, sub-subcontractors, materialmen, or agents of any tier, their officers, directors, agents, or employees, whether or not caused in part, directly, indirectly, by the active or passive negligence or any other fault of a party indemnified hereunder provided, however, subcontractor's [Flexicrew's] duty hereunder shall not arise if such injury, sickness, disease, death, damage, or destruction is caused by the sole negligence of a party indemnified hereunder.

Subcontractor's [Flexicrew's] obligation hereunder shall not be limited by the provisions of any worker's compensation or similar act.

Subcontractor's [Flexicrew's] obligations under this provision continue after final payment and acceptance of the work and are applicable to the operations and completed operations of the subcontractor.

* * *

…This Agreement will be interpreted in accordance with the law of the State of Louisiana….

* * *

Choice of Law/Venue: This Agreement is to be governed by and construed according to the laws of the State of Louisiana….

(Doc. 187-3 at 1-7).

From September 26-29, 2011, USES performed the work of removing rainwater from the barge and cleaning the barge, by having workers pressure wash the interior of its tanks and pump out excess rainwater.   (Docs. 1, 50).   Brunson, previously hired by Flexicrew on September 4, 2011, was one of the workers assigned to clean the barge's tanks.   (Id.)   Brunson cleaned the tanks until September 28, 2011, when he reported that he was suffering hair loss, skin irritation, nausea, and vomiting.   (Id.)   As alleged, on October 7, 2011, Brunson sought medical treatment and was diagnosed with chemical exposure injuries including permanent injuries. (Id.)   Brunson underwent surgery, the insertion of a J-tube (a feeding tube), was placed on a liquid diet, and continues to suffer from the effects of the exposure. (Id.)

On April 17, 2012, Brunson sued Apex in the Circuit Court of Mobile County, Alabama,

3

for his personal injuries (*CV-2011-902394*).   Brunson initially filed his lawsuit against only Apex claiming that he was exposed to unknown chemicals while cleaning the subject barge. Brunson amended the Mobile County lawsuit to add Natures Way as a defendant.   On June 12, 2012, Natures Way filed this federal action seeking exoneration from or limitation of its liability (the "Limitation of Liability Action").   (Doc. 1).   Natures Way states that the aggregate amount of Brunson's claim and claims will likely exceed the amount of the value of its interest in the barge, which is "reasonably believed" to be worth $421,600 (including hull, appurtenant equipment and pending freight).   (Docs. 1-4, 21).   The following resulted:

- On June 21, 2012, Brunson answered Natures Way's Complaint and asserted a claim against Natures Way alleging that his injuries resulted from its "negligence, carelessness and fault[,]" and unseaworthiness of the barge.   (Doc. 7).
- On July 18, 2012, Flexicrew, and Commerce & Industry Insurance Company c/o Chartis Insurance (who is no longer a party), answered Natures Way's Complaint and asserted a claim for indemnity/contribution and subrogation.   (Doc. 12).
- On July 18, 2012, Apex answered Natures Way's Complaint, and filed a claim against Natures Way for negligence/unseaworthiness, and contractual indemnity and defense.   (Docs. 13, 14).
- On August 8, 2012, Natures Way answered Flexicrew's (and Chartis' then) claims and filed a Counterclaim against Flexicrew for negligence, breach of workmanlike performance, and breach of implied/express warranties.   (Doc. 25).
- Natures Way answered Brunson's claim and Apex's claim.   (Docs. 26, 27).
- On August 14, 2012, Apex filed a separate federal declaratory judgment action against Flexicrew (*CV 12-507-WS-N*), concerning its indemnity claim.
- On August 29, 2012, Flexicrew answered Natures Way's Counterclaim against it, and filed a Cross-Claim against Apex for indemnity and contribution.   (Doc. 32).
- On September 21, 2012, Apex answered Flexicrew's Cross-Claim against it, asserted a Cross-Claim against Flexicrew for contractual indemnity and contribution, and asserted a Third-Party Complaint against USES for indemnity and contribution under Rules 14(a), 14(c) and 9(h).   (Doc. 36).
- On October 24, 2012, having voluntarily dismissed his state court lawsuit, Brunson filed his "Verified Amended Complaint under 33 U.S.C. 905(b), General Maritime Law, and Negligence" re-alleging his personal injury claims against Apex and Natures Way as follows: against Natures Way under 33 U.S.C. § 905(b); against Apex under 33 U.S.C. § 905(b) and negligence; and against both for wantonness.   (Doc. 50).
- On October 26, 2012, Apex filed its answer to USES' counterclaim.   (Doc. 51).
- On October 30, 2012, Apex filed an Amended Cross-Claim against Flexicrew, asserting cross-claims for contractual indemnity and contribution, due to its alleged third-party beneficiary status.   (Doc. 53).
- On November 8, 2012, Apex's separate federal action, *Civil Action 12-00507-WS-N*, was

consolidated with this case.   (Docs. 58, 59).

- On November 12, 2012, Flexicrew filed its answer USES' counterclaim against it (Doc. 60), as well as its answer to Apex's amended cross-claim (Doc. 61).
- On November 14, 2012, Flexicrew filed its answer to Apex's declaratory judgment.   (Doc. 62).
- On November 16, 2012, Apex filed its answer to Brunson's Verified Complaint (Doc. 63).
- Flexicrew moved to dismiss Apex's cross-claim (Doc. 40), which was denied.   (Docs. 83, 100).
- On February 18, 2013, Natures Way filed its answer to Brunson's Amended Complaint, and asserted cross-claims against USES and Apex for negligence, breach of the warranty of workmanlike performance, and breach of express/implied warranties.   (Doc. 124).
- On March 11, 2013, Apex filed its answer to Natures' Way's cross-claim.   (Doc. 144).
- On March 22, 2013, Flexicrew filed its First Amended Answer to Natures' Way's counterclaim against it (Doc. 153), to Apex's amended cross-claim against it (Doc. 154), and to USES's counterclaim against it (Doc. 155).
- Also on this date, USES filed a First Amended Counterclaim against Flexicrew for indemnity and contribution, breach of contract, and negligent failure to procure insurance (Doc. 156), and filed its answer to Natures Way's cross-claim against it (Doc. 158).
- On April 5, 2013, Flexicrew filed its answer to USES' first amended counterclaim.   (Doc. 171).
- On April 16, 2013, Apex filed a Second Amended cross-claim against Flexicrew for contractual indemnity/contribution.   (Doc. 175).
- On April 30, 2013, Flexicrew answered Apex's Second Amended cross-claim.   (Doc. 184).

In 2011, Brunson filed a compensation claim under the *Longshore and Harbor Workers'
Compensation Act* ("LHWCA"), 33 U.S.C. § 901 *et seq*., against Flexicrew.   On December 27,
2011, Flexicrew denied Brunson's claim, finding no causation between his employment and
injuries.   (Doc. 200-4).   To date, Flexicrew has not paid any LHWCA benefits to Brunson.

## II.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED.
R. CIV. P. 56(a) (Dec. 2010).   Rule 56(c) provides as follows:

*(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely
disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions,
documents, electronically stored information, affidavits or declarations, stipulations
(including those made for purposes of the motion only), admissions, interrogatory
answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a

genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

*(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

*(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal citations and quotations omitted).

**III.   Governing Law**

Apex's contractual claims are governed by the laws of the State of Louisiana.

6

Specifically, Apex's claims stem from the August 13, 2010 labor staffing contract; notably, interpretation of the terms and provisions of same.   The contract contains choice of law provisions specifying that "[this Agreement will be interpreted in accordance with the laws of the State of Louisiana[]" and "[t]his Agreement is to be governed by and construed according to the laws of the State of Louisiana."   (Doc. 187-3 at 7).

The *Louisiana Civil Code*, LSA–C.C. Art. 2047, provides that "[t]he words of a contract must be given their generally prevailing meaning."   Whether Louisiana law or maritime law applies to the contractual interpretation, courts are to apply a plain-language interpretation when reading contracts. Louisiana Land and Exploration Co. v. Offshore Tugs, Inc., 23 F.3d 967, 969 (5th Cir. 1994).   The choice of law established by the contract will govern.   Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc., 585 F.3d 236, 242 (5th Cir. 2009).   Thus, contractual choice of law provisions are recognized as valid and enforceable.   See, e.g., In re White Tail Oilfield Servs., LLC, 2012 WL 2952439, *2 (E.D. La. Jul. 19, 2012); LSA-C.C. Art. 3540 (providing that "[a]ll other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties[]").   The parties do not dispute whether the choice of law clauses are enforceable, and no party has made a showing (or even alleged) that Louisiana law is inapplicable.   See, e.g., Authenment v. Ingram Barge Co., 878 F. Supp. 2d 672 (E.D. La. 2012).   Instead, Apex's motion analyzes its third party beneficiary claim under Alabama law, failing to address the Louisiana requirements for such claim.   Nevertheless, the Court on its own review with Flexicrew's Response (Doc. 209), concludes that Apex has not met its burden of proof that it is a third party beneficiary.

IV.    **Discussion**

Apex moves for summary judgment on its claims against Flexicrew for defense and indemnity.   (Doc. 175).   While not a party to the USES-Flexicrew August 2010 contract, Apex contends that the contract nevertheless requires Flexicrew to defend, indemnify and hold it harmless because it is a third-party beneficiary.   In response, Flexicrew contends that: 1) as a statutory employer, Section 905(b) shelters it from liability to vessels; 2) if the contract is not void under Section 905(b) and maritime law, then any indemnity claim is premature under Louisiana law; 3) Apex is not a third-party beneficiary; and 4) the contract is inapplicable. Because Apex's third party beneficiary status is dispositive to the remaining claims, the Court addresses this issue first.

Apex's summary judgment is based entirely on its assertion that it is a third-party beneficiary to the contract because: 1) it is the "owner" referenced in the indemnification Paragraph 8 – as it is the "owner of the subject premises;" and 2) it should "be considered the owner" of the barge under the charter agreement with Natures Way if it had complete control over the barge (Doc. 187-1 at 3).   Apex bears the burden of proof.   See, e.g., Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary, 939 So.2d 1206, 1212 (La. 2006) (providing that "[t]he most basic requirement … is that the contract manifest a clear intention to benefit the third party; absent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof… [it] …is never presumed. The party claiming the benefit bears the burden of proof[]"); LSA-C.C. Art. 1831 ("a party who demands performance of an obligation must prove the existence of the contract[]").

The *Louisiana Civil Code*, LSA–C.C. Art. 1978, provides that a contracting party may

8

stipulate to a benefit for a third person[6] -- a *stipulation pour autrui*; however, "[i]n order to be a true third-party beneficiary, the *stipulation pour autrui* must be in writing and can never be presumed."   See, e.g., Opelousas Trust Auth. v. Cleco Corp., 105 So.3d 26, 33 (La. 2012) (citing Spears v. McCormick & Co., Inc., 520 So.2d 805, 811 (La. App. 3 Cir. 1987); Eagle Pipe and Supply, Inc. v. Amerada Hess Corp., 79 So.3d 246, 282-284 (La. 2011); Albe v. City of New Orleans, 97 So.3d 583, 587 (La. App. 4 Cir. 2012).   While the Code provides few governing rules and such status must be decided on a case-by-case basis, the Louisiana Supreme Court has set forth criteria for determining whether contracting parties have provided a benefit for a third party: 1) whether the stipulation for a third party is manifestly clear; 2) whether there is certainty as to the benefit provided the third party; and 3) whether the benefit is not a mere incident of the contract between the promisor and promisee.   Eagle Pipe, 79 So.3d at 283; Joseph, 939 So.2d at 1211-1214.   In applying these criteria, courts "ultimately rely on the words of Article 1978 that the contract must 'stipulate a benefit for a third person.'"   Id.   "Each contract must be evaluated on its own terms and conditions in order to determine if the contract stipulates a benefit for a third person."   Joseph, 939 So.2d at 1212.

Turning to the USES-Flexicrew contract, the Court finds as follows.   At the outset, Apex is not named or referenced in the contract such there is no express or clear manifestation as to its benefit.   This is because the contract was executed in the Summer of 2010 -- over one (1) year prior to the execution of the Natures Way-Apex charter agreement -- *i.e.*, Apex was not "involved" or "on the scene" at the time of the contract's execution.   *However*, the contract

---

6 La. C.C. art. 1978 provides: "A contracting party may stipulate a benefit for a third person called a third party beneficiary. Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement."

states that the work to be provided by Flexicrew as a subcontractor to USES "may be used for a single project, or may serve as a master services agreement for a series of projects[,]"[7] (Doc. 187-3 at 1-2), and the indemnification paragraph includes Flexicrew's obligation to defend, indemnify, and save harmless, the "owner."   (Id. at 6 at ¶8).[8]   As such, the contract appears to provide an express or clear manifestation to benefit yet unknown individuals/entities who are also "owners."   Thus, the question is whether, under Louisiana law, Apex is an "owner" -- an "undeterminable" *stipulation pour autrui* in this contract.

Apex contends that it may be considered an "owner" under the Natures Way-Apex charter agreement if it had complete control of the barge.   (Doc. 187-1 at 9).   Apex's contentions are unsupported by fact or law and lack merit.   The charter agreement clearly provides that Natures Way is the "owner" and Apex is the "charterer."   (Doc. 179-4; Doc. 179-3 at 2 (Dep. J.Spencer at 20)).   The terms of the charter contract do not support a finding that Apex could be considered the owner under any circumstances -- including whether Apex had "complete control" of the barge.   Per the clear terms of the charter contract, Natures Way was, at all times, the "owner."   (Doc. 179-4; Doc. 179-3 at 2 (Dep. J.Spencer at 20)).[9]

---

7 In other words, projects yet to be acquired, or future projects.

8 The contract also provides that it "concerns services and work to be provided by you [Flexicrew] as a subcontractor to us [USES], regarding a project to be performed for **our client**."   (Doc. 187-3 at 2 (emphasis added)).   In its motion, Apex specifically and exclusively argued that it is "the client" *with regard to the July 2010 contract*, which does not apply to this case. (Doc. 187-1 at 3).   As for the August 2010 contract, Apex argued that it is the "owner."   In its Reply Apex contends that it is a "client" under the August 2010 contract, thus endeavoring to (now) claim that it is both "owner" and "client" under this later contract. (Doc. 219 at 12-14).   However, the indemnification paragraph, as written, does not apply to the "client" -- the word "client" is not even mentioned. The contract terms (which are unambiguous) govern.

9 Further undermining Apex "owner" contention, are its admissions on summary judgment that it "had no 'owner' type capacity or responsibility for the barge[]" (Doc. 201 at 21), and that Natures Way "is the owner[]" (Doc. 187-1 at 3).

10

Apex also contends that because it is the owner of the premises adjacent to the barge, it is the "owner" referenced in Paragraph 8 of the USES-Flexicrew contract.   However, Brunson's injury is alleged to have occurred while he was physically working on the barge owned by Natures Way (inside its tanks or topside as hole watch), when it was docked on the Theodore Industrial Canal (a navigable waterway), not at Apex "subject premises" or facilities.   (Doc. 179-2 at 11, 14-17 (Dep. C.Brunson at 279, 284-287); Doc. 179-6 at 9-10 (Dep. W.Blackmon at 115-116)).   At all times while working, Brunson was positioned on the barge or in the barge, rather than at the Apex facility.   (Doc. 209-6 at 2 (Dep. T.Jackson at 151)).   There are no claims against Apex based on its ownership of the adjacent premises.   Accordingly, Apex cannot claim the status of an "owner" under the USES-Flexicrew contract.

Also, Apex has not submitted evidence that USES had a contractual obligation to indemnify Apex.   Thus, Apex is unable to claim the status as an "other party" under the USES-Flexicrew contract.

In sum, it is not manifestly clear that Apex was an intended third party beneficiary. Because Apex has not established under Louisiana law that it is a third party beneficiary to the USES-Flexicrew contract, Apex's motion for summary judgment (Doc. 187) is **DENIED.**

**DONE** and **ORDERED** this the **24**[th] day of **September 2013.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

11